STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-04-175

FILED & ENTERED
SUPERIOR COURT

JUN 29 2006

PENOBSCOT COUNTY

Advanced Construction Corp.,
    Plaintiff

v.

Decision and Judgment

David Sanzaro,
    Defendant

A consolidated hearing was held on the complaint and counterclaim. A representative of the plaintiff, the defendant and both attorneys of record were present. Following the hearing, the parties filed submissions revealing that through administrative action, the corporate plaintiff has been dissolved. At a conference of counsel, the parties confirmed that despite this event, the parties' claims still may be adjudicated on their merits.

The parties both operate as contractors. The plaintiff's work focused on building construction and property management, and the defendant works as an excavator and site work contractor. Until their relationship deteriorated in early 2004, the parties worked on projects together, and in fact the defendant and the plaintiff's principal were good friends. In the case at bar, the parties each allege that the other has converted construction-related equipment and other property that they previously had been willing to let the other use. Additionally, the defendant claims that he is owed money from the plaintiff for site work that the plaintiff, as a general contractor, hired him to perform.

**Conversion claims**

At the time their relationship became antagonistic in January 2004, each party was in possession of the personal property belonging to the other. It had not been uncommon for the parties to allow the other to borrow such items. However, the quality of their communications diminished to the point where it became difficult for them to

1

make arrangements for the items of property to be returned to their respective owner and for them to sort out issues of who had what. Ultimately, in mid-2005, after a considerable amount of interchange between the parties through counsel, some of which constituted an effort to find a single date that was suitable to everyone involved, the parties returned most of the items that had been on loan, with several exceptions that are the subject of the cross-claims for conversion.

The court declines to find either party liable for converting items of personal property that were eventually returned to the true owner. The plaintiff argues such a theory, although the defendant seeks recovery only for items that he claims the plaintiff failed to return to him. Although the plaintiff argues that a prolonged period of unauthorized possession may rise to the level of a conversation, there are no proven residual damages for the retention of property that was returned in the end. Regarding those items of property for which the plaintiff lost use while they remained in the defendant's hands, the plaintiff seeks consequential damages. First, it alleges that it had to rent a truck because the defendant remained in possession of the tailgate for its truck and thus was not able to use it fully. Second, the plaintiff alleges that it spent money to rent a heater because the defendant had its. The court declines to award any damages for these alleged losses, because the plaintiff failed to produce documentation (which, the Aaron Spence (the plaintiff's principal) testified at trial, he in fact has somewhere among his business records) that the defendant expressly requested during pretrial discovery.

While the defendant was in possession of the plaintiff's tailgate, he spilled paint on it. The plaintiff is entitled to recover damages for the cost of cleaning the property. The best evidence indicates that the cost of repair is $400.

The plaintiff alleges that it had loaned the defendant a 375,000 BTU heater which, when the defendant returned it, was not working. Even if the defendant could be held liable for the problem, the plaintiff has not proven its damages on this aspect of its claim. Neither the plaintiff's original cost for the unit nor the cost to replace it is the correct measure of damages, because those amounts do not reflect the reduction of the property's value, which is the nature and extent of the loss that might be charged to the defendant. The insufficiency of evidence of damages is compounded because, as Spence testified on cross-examination, the heater did not work well when the plaintiff loaned it to the

defendant. This evidence raises additional questions about the use of the plaintiff's evidence on damages, namely, the cost of the unit and the cost to replace it, as the basis for any award that might be assessed against the defendant.

The plaintiff stored bark mulch at a site owned or used by the defendant. The parties dispute the amount involved, but the quantity is between 24 and 30 cubic yards. The plaintiff has not proven that the defendant converted this material, because the defendant has made it available for the plaintiff to retrieve. *See, i.e.,* defendant's exhibit 13 (April 28, 2005, fax from Attorney Otis).

The last conversion-related claim asserted by the plaintiff concerns a propane tank. The plaintiff alleges that it let the defendant use such a tank but that the defendant returned a different one. The defendant denies this contention, arguing that he has no use for a propane tank and thus would have no reason to keep the plaintiff's. However, the defendant apparently had sufficient need for a propane tank that he borrowed one from the plaintiff. The basis for his denial is therefore diminished. The court awards the plaintiff the cost of the tank ($100) and the value of the propane itself ($100).

The defendant has brought a counterclaim for property that he alleges the plaintiff did not return to him. First, he claims that the plaintiff did not return two hemlock beams that the plaintiff used on a construction project in Bangor. The plaintiff had borrowed three but returned one. The plaintiff asserts that it also returned the other two. However, the evidence demonstrates that at least one of them had been cut into smaller pieces while in the plaintiff's possession. This damage may have been caused by the property owner. Nonetheless, the plaintiff is liable for the loss. That one beam was damaged and not returned whole undercuts the plaintiff's denial. It is therefore liable for the value of the two beams, which is a total of $80.

The defendant also alleges that the plaintiff did not return to him a cable sling ($160 value), four staging planks (collective value of $80) and a bottle jack (value of $70). The plaintiff responds that it never borrowed such items from the defendant. The record does not allow a principled basis on which to conclude that the defendant has established his claim for conversion of these items. Thus, these aspects of that claim are denied.

3

**Counterclaim for breach of contract**

The plaintiff subcontracted with the defendant to perform earthwork as part of the construction project for Autotronics, in which the plaintiff entered into a contract to construct an addition to an existing building. The plaintiff functioned as the general contractor for the project. The defendant alleges here that the plaintiff owes him roughly $9,000 due under their contracts, in addition to statutory remedies such as attorney's fees and interest.

The parties entered into three separate contracts for the work to be performed by the defendant. *See* defendant's exhibits 2-4. The first contract was for earthwork at the site of the new structure itself. The plaintiff agreed to pay $25,842. Under the second contract, the defendant was to do the site work for a parking lot. For that work, he was to receive $43,884.50. And the third contract required the defendant to perform additional site work for another parking lot. Consideration for the last contract was $10,098.[1] The plaintiff contends that the work within the scope of the third contract was the product of an agreement between the owner of the building and the defendant directly and that it (the plaintiff) was not a party to that agreement. The court rejects this claim because the parties at bar entered into a written contract for that work and because the property owner testified that he did not have any contracts or agreements with the defendant directly for earthwork. Rather, as he testified, all of the defendant's agreements were with the plaintiff.

The total amount due to the defendant under these three contracts was $79,824.50. Of the amount due, the parties agree that the plaintiff made three payments amounting to $30,839. *See* plaintiff's exhibits 9-11.[2] Additionally, despite the absence of a direct contractual relationship between the property owner and the defendant, the former paid the latter $40,000. The property owner did so because a dispute arose between him and the plaintiff. Regardless of whether the property owner paid the plaintiff for the

---

[1] The work required by the third contract was also characterized as an enlargement of the first parking lot rather than the construction of a separate area. That issue is not material to the adjudication of the defendant's counterclaim.

[2] The three contracts admitted into evidence as defendant's exhibits 2-4 are amended agreements that superceded earlier contracts, *see* defendant's exhibits 10-12, which the parties changed after the scope of the work became more clear.

4

construction work (this is a point in dispute between the two), the plaintiff did not pay the defendant the full amount due under the contracts even though the defendant performed pursuant to the contracts. The defendant then approached the property owner directly and threatened to file liens against the property because he had not been paid fully. In order to avoid the encumbrance, the property owner elected to pay the $40,000 to the defendant.

Thus, in sum, the defendant was owed $79,824.50, and he received $70,839, leaving – at this stage of the computation – a balance due of $8,985.50. Curiously, however, the defendant reduced the payments due under the second and third contracts by a factor of approximately 10%. Based on the defendant's calculations, he was therefore entitled to be paid a total of $75,642. *See* plaintiff's exhibit 15. Then, in addition to that balance, the defendant submitted monthly invoices to the plaintiff setting out not only the balance due under the contracts but also interest (1.5% per month) on that principal balance. The plaintiff contests this charge, which is addressed below.

At initial issue here is an additional payment of $7,924 that the plaintiff also made to the defendant. *See* plaintiff's exhibit 12. The question is whether, as the plaintiff contends, it made this payment toward the amount due for the Autotronics project, or whether, as the defendant contends, it represents money the plaintiff owed to him for unrelated work he performed for the plaintiff (snowplowing a commercial premises and working at a separate residential construction project). Pursuant to M.R.Civ.P. 8(c), "payment" is an affirmative defense that, because of such a characterization, must be established by the respondent to a claim of money owed. Such an allocation of the burden of proof is sensible, because a party making payment is in a superior position to make clear the reason for any payment made. As applied here, this means that the plaintiff bears the burden of proving that the payment of $7,924 was for amounts owed under the Autotronics project.

The plaintiff has failed to satisfy its burden of proof. The amount of the payment in issue does not match the amount that either the plaintiff or the defendant claims was due at the time it made the payment, either for the Autotronics project or for the other work to which the defendant argues it applies. The plaintiff thus has created uncertainty by making a payment in an amount that does not correspond quantitatively to any of the

5

outstanding debts it owed at the time. Accordingly, the payment cannot be explained as one intended for the Autotronics work any better than it can be explained as one for unrelated work. The differences between the payment and the balance owed on the Autotronics contracts on the one hand, and between the payment and the balance owed on the unrelated work on the other hand, shed little light on the basis and reason for the payment.

Further, the parties agree that the other three payments made by the plaintiff should be credited to the amount it owed the defendant for the Autotronics work. The records for these three payments, which the plaintiff itself created, expressly establish that this was their purpose. *See* plaintiff's exhibits 9-11. The corresponding record for the payment in dispute, on the other hand, does not set out a similar notation. *See* plaintiff's exhibit 12. This by itself is evidence that the plaintiff intended the payment for some account or purpose other than the Autotronics project.

The court therefore concludes that the plaintiff is not entitled to credit of $7,924 toward the amount it owes the defendant on the claim at bar. The court, however, rejects the defendant's attempt to impose interest charges as part of the parties' agreement. Although the defendant submitted invoices that recite the assessment of interest, he ostensibly imposed interest unilaterally and without agreement from the plaintiff. Further, the defendant has not proven that the plaintiff failed to object to the imposition of interest. Indeed, the defendant attempted to add other additional charges onto the amount owed by the defendant. These additional charges constituted amounts that lending institutions assessed against him as part of loans he had obtained from them. The plaintiff objected to the inclusion of those charges as part of the amount the defendant sought here, and the defendant then abandoned that aspect of his claim. The court cannot find that the plaintiff failed to challenge the more conventional interest charges that the defendant sought to extract.

Finally, the plaintiff contends that the defendant is not entitled to full payment under the contracts because the defendant's work was defective. The evidence establishes that after the defendant completed the earthwork, water accumulated on site, causing problems to the building and infrastructure. Those problems, however, are not attributable to the defendant. The defendant completed the site work that was required of

6

him, and the water problems resulted because, apparently as a result of the dispute between the plaintiff and the property owner, the plaintiff, in its capacity as general contractor, did not assure completion of the floor installation, thus allowing the water problem to occur.

The defendant testified that with the 10% discount on part of the work he performed for the plaintiff, the amount due under the contracts was $75,642. Of this, the defendant was paid $70,839. Excluding the interest charges that the court has rejected, this leaves a balance due of $4,803. The defendant shall be entitled to interest on this amount pursuant to 10 M.R.S.A. § 1114(4). However, the defendant shall not be entitled to payment of the penalty otherwise authorized by the terms of section 1118(2), because this action was not "commenced to recover payment" due under the contract. Rather, the defendant's claim for money owed was asserted as a counterclaim after the action was commenced for other reasons.

Finally, under section 1118(4), the defendant is entitled to reasonable attorney's fees. The exhibits reveal that part of the work of both parties' attorneys prior to trial involved sorting out the personal property. Further, a meaningful amount of the trial related to the property issues. However, the defendant's claim under the contracts also constituted a significant claim when viewed in the context of the entire proceeding. The defendant seeks an award of attorney's fees of approximately $7,850. In light of the circumstances noted above, the court awards fees of $4,000. This amount also bears a more appropriate relation to the amount recovered on this claim than the full amount of attorney's fees the defendant seeks here.

The entry shall be:

For the foregoing reasons, on the complaint, judgment is entered for the plaintiff in the amount of $600, plus pre-judgment interest at the annual rate of 4.28% and post-judgment interest at the annual rate of 10.36%.

On counts 1, 2 and 3 of the counterclaim, judgment is entered for the defendant (counterclaim plaintiff) in the amount of $4,803, plus interest pursuant to 10 M.R.S.A. § 1114, plus attorney's fees and costs of $4,000. On count 4 of the counterclaim, judgment is entered for the defendant (counterclaim plaintiff) in the amount of $80, plus pre-

judgment interest at the annual rate of 4.28% and post-judgment interest at the annual rate of 10.36%.

Dated: June 28, 2006

Justice, Maine Superior Court
Jeffrey L. Hjelm

06/29/2006          MAINE JUDICIAL INFORMATION SYSTEM       ksmith
               PENOBSCOT COUNTY SUPERIOR COURT       mjxxi048
                    CASE PARTY ADDRESS BOOK

ADVANCED CONSTRUCTION COMPANY VS DAVID SANZARRO
UTN:AOCSsr  -2004-0087866                    CASE #:BANSC-CV-2004-00175
----------------------------------------------------------------------
ADVANCED CONSTRUCTION COMPANY                            PL
ATTY BABER, BRETT D.   Tel# (207) 945-6111
ATTY ADDR:304 HANCOCK ST, SUITE 2E BANGOR ME 04401

DAVID SANZARRO                                           DEF
ATTY OTIS, JAY  Tel# (207) 989-6600
ATTY ADDR:PO BOX 907 146 PARKWAY SOUTH SUITE 10 BREWER ME 04412-0907

M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

ADVANCED CONSTRUCTION COMPANY VS DAVID SANZARRO
UTN:AOCSsr  -2004-0087866                    CASE #:BANSC-CV-2004-00175
--------------------------------------------------------------------------
ADVANCED CONSTRUCTION COMPANY                              PL
ATTY BABER, BRETT D.   Tel# (207) 945-6111
ATTY ADDR:304 HANCOCK ST, SUITE 2E BANGOR ME 04401

DAVID SANZARRO                                            DEF
ATTY OTIS, JAY  Tel# (207) 989-6600
ATTY ADDR:PO BOX 907 146 PARKWAY SOUTH SUITE 10 BREWER ME 04412-0907

M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

JAY R MCLAUGHLIN DBA MCLAUGHLIN LOGGING VS RICKY J DELODGE SR AKA RICK J DELODGE
UTN:AOCSsr  -2005-0032141                      CASE #:BANSC-CV-2005-00060
------------------------------------------------------------------------------
JAY  R. MCLAUGHLIN DBA MCLAUGHLIN LOGG                        PL
ATTY HUNT, PATRICK  Tel# (207) 463-2285
ATTY ADDR:7 SHERMAN ST PO BOX 130 ISLAND FALLS ME 04747

RICKY  J. DELODGE AKA RICK J DELODGE, SR                      DEF
ATTY HARMAN, MICHAEL  Tel# (207) 723-9793
ATTY ADDR:FOUR HILL STREET MILLINOCKET ME 04462


M=More, Space = Exit:M

Select the EXIT KEY for page selection line.